UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOHN EDWARD GILCREASE SR              CIVIL ACTION NO. 20-cv-707 SEC P

VERSUS                                JUDGE ELIZABETH E. FOOTE

DEP CROSS ET AL                       MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

John Gilcrease ("Plaintiff") is a self-represented inmate housed at the Caddo Correctional Center ("CCC"). He alleges that Deputy Rodney Cross pushed him down in a housing unit and placed him in lockdown based on retaliation. Plaintiff originally named as defendants Deputy Cross and CCC, but he later stated (Doc. 18) that he wished to replace CCC with Sheriff Steve Prator. Before the court is a Motion for Summary Judgment (Doc. 15) filed by Cross and Prator. For the reasons that follow, it is recommended that the motion be granted.

**Plaintiff's Complaint**

Plaintiff alleges that on April 3, 2020, Deputy Cross wrongfully tried to place him in lockdown, which "turned into" Cross threatening to break Plaintiff's "good leg" and screaming across the dorm to the point that co-worker Deputy Scott told Cross that was enough. Plaintiff alleges that he attempted to return to his cell, but when he was bending over to push his box and mat into his cell, Deputy Cross approached from behind and pushed Plaintiff (who describes himself as physically challenged) to the ground. Cross

allegedly placed Plaintiff in lockdown for 22 hours after Plaintiff returned from the medical unit. This was, Plaintiff alleges, retaliation for a comment made by Plaintiff. Scott allegedly stated that he would kick all the inmates' asses if the jail would let him, and Plaintiff replied that was why he got knocked out before.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Excessive Force**

The record is not clear, but it appears that Plaintiff was a pretrial detainee at the time of the incident. The claim of a pretrial detainee that he was subjected to excessive force is governed by the Due Process Clause, rather than the Eighth Amendment that applies to

claims by convicted prisoners.  "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015).  Objective reasonableness turns on the facts and circumstances of each particular case, and a court must make the determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.  Id.

A non-exclusive list of factors that may bear on the reasonableness or unreasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  Id.

Defendants offer competent summary judgment evidence, including a declaration of Deputy Cross made pursuant to 28 U.S.C. § 1746.  Cross states that he and Deputy Breck Scott were the two deputies working the Delta housing unit on April 3, 2020.    Plaintiff was wearing a medical "boot" on his foot at the time and had done so for a lengthy period before this event.  Inmates were allowed out of their cells in the common area at particular times, but due to COVID procedures, the inmates were required to sit six feet apart.  All of the inmates followed those instructions except Plaintiff and his cellmate.   Cross states that he ordered them to separate, but they refused, which caused him to decide to place each in lockdown.

Cross states that there was a cell in the housing unit for lockdown, but it was not
available.  When that is the case, an inmate's own cell can be used as a lockdown cell, but
his locker and bedding are removed and placed adjacent to the housing unit deputy station.
Cross states that Plaintiff refused to remove his property from his cell, so Cross removed
the footlocker and bedding and placed them outside the cell, but he then had to stop to take
care of other business.

Plaintiff, according to Cross, then moved from where he had been sitting, picked up
the footlocker and bedding, and began to move them toward the cell.  Cross states that he
approached Plaintiff from behind, used his left hand to grab Plaintiff's right arm, and
pushed the bedding and footlocker back on the ground with his right hand.  Cross states
that he did not use any other force and did not cause Plaintiff to fall.

Cross allows that Plaintiff did fall, but he states that Plaintiff "appeared to throw
himself forward, I believe intentionally, and in a way that was meant to look like force had
been used when it had not."  Cross states that Plaintiff yelled repeatedly, "He hurt my leg."
Cross believes that it was obvious Plaintiff was exaggerating what occurred, but if Plaintiff
actually fell because of Cross's contact, then it was accidental.

Deputy James Steve Procell was working as a nurse in the medical unit at the time
of the incident.  He also offers a declaration made pursuant to Section 1746.  Deputy Procell
states that Plaintiff was brought to the medical unit for evaluation after an incident in the
housing unit.  Plaintiff complained that he had a scratch on his left elbow, right ring finger
pain, a small abrasion to his left forearm, and he complained of left knee pain.  Procell
examined Plaintiff, found that he had a full range of motion of the left elbow without pain,

and there was no evidence of injury to the right ring finger or left knee. Plaintiff was returned to his housing unit. A medical record entry (Doc. 16, p. 5) is consistent with Procell's statement.

Plaintiff filed three submissions (Docs. 19, 20, & 22) in response to the motion. Plaintiff alleged that the surveillance video would show that Deputy Cross screamed at him and threatened him, and Plaintiff reacted by moving behind a "pill nurse" with his hands in the air and asking for a shift sergeant. He adds that the video will show that he never picked up his footlocker but merely bent over and started to push it back into his cell.

Plaintiff states that his orthopedic boot is curved on the bottom and locks his ankle in place. He was bent over with his weight on that leg "so when Deputy Cross made contact with me it catapulted me forward." Plaintiff admits that he yelled after he fell, but he denies that he said anything about his leg. Plaintiff states that he never saw Deputy Cross behind him "and can't say what force he used" but "only how I was thrown to the ground" even though he was told no one touched him. Plaintiff makes these statements only in an unsworn memorandum, but "[u]nsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence." Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).

Defendants submitted surveillance video from the housing unit. The disk contains four video-only clips of the incident that range from about 90 seconds to 4 minutes long, from slightly different views. The video shows that Plaintiff appeared to be agitated, then walked rather briskly across the pod in his boot and bent over to pick up some items. Deputy Cross approached Plaintiff from behind, walking at a normal pace, and engaged

Plaintiff in generally the manner described by Cross. The details of the incident are partially obscured by a stairwell, but there was only brief contact before Plaintiff sprawled forward and began to roll on the floor as if in pain. Within a few seconds, another officer helped Plaintiff to his feet, and Plaintiff walked without apparent difficulty to a nearby chair, where another officer (perhaps medical) talked to him. It cannot be determined from the video alone whether Cross pushed Plaintiff with unnecessary force, whether Plaintiff staged a fall, or whether incidental and ordinary contact led to an accidental fall.

Plaintiff also complains, particularly in Doc. 20, about what evidence the movants did *not* offer. He complains that they did not file a sworn statement from Deputy Breck Scott or the pill nurse. Plaintiff complains that the record does not include Deputy Cross's written report, an incident report, a sick call kite from April 9, 2020, cell phone photos allegedly taken by the shift sergeant, an internal affairs report that sustained a finding that Cross was rude and unprofessional, and other similar evidence. He complains that Defendants did not file his medical records, but they did. Doc. 16.

Defendants do not have to present all relevant evidence to meet their summary judgment burden. Plaintiff bears the burden of proof at trial, so the movants need not disprove every element of his case; rather, they can satisfy their burden by pointing to the absence of evidence to support his case. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Once they show that there is no genuine issue of material fact, or they specifically challenge the plaintiff's ability to prove an essential element of his claim, the burden shifts to Plaintiff to "produce evidence or designate specific facts showing the

existence of a genuine issue for trial." Allen v. Rapides Par. Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000).

These defendants have also raised qualified immunity. When a defendant pleads qualified immunity, the burden shifts to the plaintiff, "who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020). Plaintiff was obligated to produce relevant and competent summary judgment evidence if he wished to defeat the motion, but he did not offer anything but unsworn memoranda.

With regard to the Kingsley factors, the evidence submitted by Defendants, and even the facts described by Plaintiff, suggest that there was only minor contact between Deputy Cross and Plaintiff. Plaintiff, who was in an awkward position given his boot, fell forward from an already crouched position. The slight contact was made because Plaintiff was interfering with an officer's ability to place him on lockdown in his cell, and any resulting injury was minimal. These factors suggest that any force used was reasonable under the Kingsley standard and that Deputy Cross is entitled to summary judgment on the merits or, in the alternative, based on qualified immunity. See Tennyson v. Villarreal, 801 Fed. Appx 295, 296 (5th Cir. 2020) (officers who allegedly injured detainee when they took him to the ground to handcuff him when breaking up a disturbance were entitled to qualified immunity under Kingsley standard).

Plaintiff's own description suggests that the contact between the two men was nominal, making his fall a simple accident. Even if Deputy Cross's conduct could be described as negligent, mere negligence by the officer will not make out a claim. Kingsley,

135 S.Ct. at 2472, citing Daniels v. Williams, 106 S.Ct. 662 (1986) (affirming dismissal of inmate's claim that he slipped on a pillow negligently left on the stairs by a deputy).

Defendants properly supported their summary judgment motion with sworn affidavits and video, and Plaintiff did not submit any competent summary judgment evidence. Even pro se litigants may not oppose summary judgment motions with unsworn materials. See Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980). Neither Plaintiff's complaint nor his summary judgment oppositions were sworn or otherwise in the form of competent summary judgment evidence. Because the only competent evidence came from Defendants, Plaintiff has failed to show a genuine dispute as to any material fact. See Narro v. Edwards, 829 Fed. Appx 7, 12 (5th Cir. 2020) ("Because Mr. Narro did not submit a sworn affidavit or other competent evidence, the court cannot credit his version of events."); Turner v. Baird, 707 Fed. Appx 290, 291 (5th Cir. 2017) (affirming summary judgment for corrections officer in a similar setting). Defendants are entitled to summary judgment on the excessive force claim.

**Retaliation**

Plaintiff alleges that his placement in lockdown for 22 hours was in retaliation for a smart remark he made that embarrassed Deputy Cross. Prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct. Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995). To state a Section 1983 retaliation claim, an inmate must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of

that right, (3) a retaliatory adverse act, and (4) causation.  Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999).

Prisoners do not enjoy the full scope of First Amendment rights held by individuals in society at large.  Some rights are inconsistent with the status of a prisoner or the legitimate penological objectives of the facility.  Shaw v. Murphy, 121 S.Ct. 1475, 1479 (2001).  A pretrial detainee's First Amendment rights are implicated if action taken against him represents an "exaggerated response" by officials to the legitimate need to "preserve internal order and discipline and to maintain institutional security."  Edwards v. Johnson, 209 F.3d 772, 779 (5th Cir. 2000), quoting Mann v. Smith, 796 F.2d 79, 82 (5th Cir. 1986).  Plaintiff has not cited any authority for the proposition that a pretrial detainee retains the First Amendment right to insult or back talk a correctional officer without being subject to reasonable discipline.

There is no evidence that Petitioner was placed in lockdown in retaliation for filing a lawsuit, lodging a grievance, or otherwise complaining through proper channels about Cross's alleged misconduct.  Plaintiff himself alleges that he made a remark to Cross, which a reasonable person could easily regard as insulting or defiant, and that was the root of the lockdown order.  Given the lack of evidence that Plaintiff was retaliated against because of any protected First Amendment activity, Defendants are entitled to summary judgment on this claim.

**Sheriff Prator**

Plaintiff has named Sheriff Steve Prator as a defendant, but he has not made any specific allegations against him.  Supervisor liability may attach under Section 1983 in

limited circumstances, but "an underlying constitutional violation is required to impose liability on the governmental body or supervisory liability on" a sheriff or other supervisor. Baughman v. Hickman, 935 F.3d 302, 311 (5th Cir. 2019). City of Los Angeles v. Heller, 106 S.Ct. 1571 (1986) (a finding that police officer did not inflict constitutional injury on plaintiff removed any basis for liability against city and members of police commission). Summary judgment is recommended on the merits of the underlying claims, so any supervisor liability claim against Sheriff Prator should also be dismissed.

Accordingly,

It is recommended that Defendants' Motion for Summary Judgment (Doc. 15) be granted and that all claims against all defendants be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.   See

Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of March,

2021.

Mark L. Hornsby
U.S. Magistrate Judge